**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **STEVEN BETTNER** | § | **CIVIL ACTION NO:** |
| | § | |
| *Plaintiff* | § | **3:19-cv-349** |
| **v.** | § | |
| | § | |
| **THOR MOTOR COACH, INC.** | § | |
| **CWI, INC., AND** | § | |
| **BANK OF THE WEST** | § | |
| | § | |
| *Defendants* | § | **JURY TRIAL REQUESTED** |

<u>**COMPLAINT**</u>

### I.   Parties

1.      Plaintiff, STEVEN BETTNER, is an individual that is now and has been at all times a citizen of Las Cruces, State of New Mexico.

2.      Defendant, THOR MOTOR COACH, INC., hereinafter "THOR,"is an Indiana corporation authorized to do and doing business in the State of Indiana with its principal place of business located at 900 CR 1, PO Box 3030, Elkhart, in, 46515, USA and is a warrantor of a Recreational Vehicle that Plaintiffs purchased and is a merchant in goods of the kind  involved in this case.

THOR agent for service of process is C T Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, TX 75201-4234.

3.      Defendant, CWI, INC., hereinafter "CAMPING WORLD," is a foreign corporation authorized to do and doing business in the State of Texas.

CAMPING WORLD's agent for service of process is C T Corporation System, 1999

Bryan St., Ste. 900, Dallas, Texas 75201-3136.

4.     Defendant, BANK OF THE WEST, hereinafter "BANK OF THE WEST," is foreign financial institution authorized to do and doing business in the State of Texas whose agent for service of process is C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

## II.     Jurisdiction

5.     This court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff  and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.  The total cost of the subject vehicle to the Plaintiffs including finance charges to date, out of pocket expenses, lost wages, loss of use damages, non-pecuniary damages, and attorney fees will be over $75,000.00.

This court has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III.     Venue

6.     Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

Venue is also proper in this district under Tex. Bus. & Com. Code §17.56.  VENUE. An action brought under this subchapter may be brought:

-2-

  (1)  in any county in which venue is proper under Chapter 15, Civil Practice and Remedies Code;  or

  (2)  in a county in which the defendant or an authorized agent of the defendant solicited the transaction made the subject of the action at bar.

Venue is also proper in this district under Tex. Bus. & Com. Code §15.033.  Breach of Warranty By Manufacturer:

A suit for breach of warranty by a manufacturer of consumer goods may be brought in any county in which all or a substantial part of the events or omissions giving rise to the claim occurred, in the county in which the manufacturer has its principal office in this state, or in the county in which the plaintiff resided at the time the cause of action accrued.

## IV. Conditions Precedent

7.  All conditions precedents have been performed or have occurred.

## V. Facts

### A. The Transaction

8.  December 9, 2017, Plaintiff purchased a new 2017 THOR ACE MODE 30.2 bearing VIN 1F65F5Dy7HDA11075, hereinafter "ACE," from CAMPING WORLD.

The "ACE," was purchased primarily for Plaintiff' personal use.  The sales contract was presented to Plaintiff at the dealership and was executed at the dealership.

9.  The sales price of the ACE, was $93,840.46.  Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law.   See ***Hughes v. Segal Enterprises, Inc.***, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** ***Chariton Vet Supply, Inc. v. Moberly Motors Co.***, **2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

10.     The contract of sale was assigned to Defendant, BANK OF THE WEST.  The contract which was assigned contained the following provision:

> **"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."**

### B.     Implied Warranties

11.     As a result of the sale of the ACE by Defendants to Plaintiff, an implied warranty of merchantability arose in the transaction which included the guarantee that the ACE would pass without objection in the trade under the contract description; and that the ACE was fit for the ordinary purpose for which such motor vehicles are purchased.

12.     Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants.  Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.     Express Warranties

13.     In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the ACE, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the ACE had, in fact, repaired the defects.

14.     Plaintiff's purchase of the ACE was  accompanied by express warranties offered by the Defendants, THOR's and CAMPING WORLD's, and extending to Plaintiff.  These warranties

were part of the basis of the bargain of Plaintiff's contract for purchase of the ACE.

15.     The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship.  Any required adjustments would also be made during the basic coverage period.  All warranty repairs and adjustments, including parts and labor, were to be made at no charge.  Additional warranties were set forth in the THOR's warranty booklet and owners manual.

### D.     Actionable Conduct

16.     In fact, when delivered, the ACE was defective in materials and workmanship, with such defects being discovered within the warranty periods.  Many defective conditions have occurred since purchase, including, but not limited to, the following in the Plaintiff's own words:

> **"We purchased a new 2017 Thor Ace on December 8, 2017. The following week (Dec 11-17) we traveled from our home in New Mexico to Georgia and back. During this trip, one rainy night we woke to water streaming down our headboard, flooding the nightstand, wall, and bedroom floor from an unidentified entry point above the bed. This was alarming, but when the rain stopped, we cleaned up and continued to our destination. On this trip we noticed the electric sleeping loft was not functioning properly (it was not level when it came down, appearing to be unstable with the roller track). This concerned us for safety and we encouraged our children to share sleeping accommodations in other areas of the RV. On January 4, 2017 I reported the 11 or so problems we identified on this initial trip, and made arrangements to bring the RV in for repair.**
>
> **Unfortunately, when we started the RV to bring it in, unknown to us, the rear electric leveling jacks had become stuck in a down position. There was no indication that the jacks had failed to retract properly, and we attempted to drive normally. It wasn't until we heard and felt the scraping against concrete that we realized the jacks weren't operating. We called Camping World and the "Good Sam" roadside assistance and after approximately two hours of calls, transfers, call backs, etc. we were eventually**

walked through a manual system reset which resulted in the jacks retracting enough for us to bring the unit in to Camping World as planned.

We brought the unit in on Jan 17, 2018 and did not get it back until February 2, 2018. We were told the leak could not be replicated or identified, so that we should essentially not worry about it happening again, that it must have been just a fluke. We were also told that all of the items we identified had been repaired. As we were leaving, I thought we had better just double check, since we don't live particularly close to Camping World, and bringing the RV back is a major inconvenience. We looked over the completed items, and attempted to operate the electric awning they had "repaired". It immediately failed to open properly. We returned to the service office and told them that they had not corrected the problem. Technicians walked out and confirmed that indeed, the awning was still inoperable. They told us they would order a new awning and that we would be contacted in a week or so to bring the RV in for installation.

We were never contacted. I followed up with a phone call, and was told that there was no record of this order, and that upon review, the awning had not been ordered at all, in fact, they didn't know if such an order would be authorized, they needed to call Thor. I again followed up days later and was told that I would need to bring the RV back so they could get the 'part number' for the awning.

In the meantime, now in March, we planned a family weekend, and were going to camp locally. Our seven year old child was attempting to climb to her top bunk bed, using the built in ladder, when the entire facia supporting the ladder fell off, sending her tumbling, and leaving a multitude of extremely sharp screws exposed at her eye level. With the bunk bed no longer functional, and the RV unsafe for children, the trip was canceled. We again returned the RV to Camping World, and roughly a week and a half later, they secured the facia back onto the bunk bed, but despite our request, they still had not addressed the awning, again sighting that they tried and didn't have the correct parts.

As May approached, we again began to plan family fun in this RV (that we thus far had only used successfully once). We were

-6-

going to travel to Florida for Memorial Day. When my husband went to start the RV, the battery was dead. We confirmed that we had gone through the proper procedures for storing, and the power supply should not have been depleted. Still, we had it jump started and went about cleaning and dusting, letting the battery recharge. To our surprise, the RV continued to fail to start thereafter, and both the engine and motor home (on different batteries and power sources) had no power. We jump started the engine, but still had no power in the rest of the unit (the slide, the appliances, air conditioner, etc.) My husband plugged the RV into our home for an unrelated external power source, but still, nothing in the RV would power on. There was a total electrical system failure. We again contacted Camping World and returned the RV to their repair center on May 21, 2018. As of today's date (June 4, 2018) it is still there. We have received no follow up on what the issue is, no estimated time for repair, etc. and of course, we missed our Memorial Day trip while the RV sat in the service center. I won't have another opportunity to take a vacation until August, so losing usage of the RV for our Memorial Day weekend plans was a very substantial loss for our family.

 Had we known that purchasing a brand new motorhome would result in more time in the shop than on the road, while we make timely payments every month, we never would have made this purchase. Rather than family fun and recreation, this RV has been only a source of continuous stress, hazard, expense, and disappointment.

They have had our RV for a month and have ignored our numerous calls asking for a status update and pricing. Our service technician, George was finally available and said that we were "in a stack of people he had to call back" when asked why we still don't have our RV or any information after a month. He told Steve the repairs (replacing the slide motor and again replacing a faulty battery disconnect, which they already did once before) will exceed $1000. Steve told them to do it, that we need the unit back. A few moments later, George called Steve to say that if we need it back by May 24, he will likely "have to have parts expedited, and that's going to cost a few hundred dollars". Steve expressed that this was not our responsibility, they've had it a month, and May 24 is another three weeks from now. George refused to acknowledge this and insisted that the cost to get the parts here before our next planned vacation of May 24 would be on us. Steve pointed out that it's been a month already with no

**parts ordered, and stated that this is Camping World's responsibility- three more weeks of having our RV is in no way an expedited service. George hung up on him.  So, that's where we are now. Please advise on what we should do. Do we have them keep our RV another 3 weeks and pay over $1000 (with labor I anticipate it will be closer to $2000, though George wouldn't say) for these defective items to be repaired? The unit cannot be used without the repairs, so we feel like we are stuck and they can take as long as they want...**"

17.     Since purchase, Plaintiff has returned his ACE to the Defendants and its authorized warranty service dealers for repairs on numerous occasions.  Despite this prolonged period during which Defendants were given the opportunity to repair the ACE,, the more significant and dangerous conditions were not repaired.  Defendants failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein.  From the date of its purchase, the ACE, continues to this day to exhibit some or all of the non-conformities described herein.

18.     The defects experienced by Plaintiff with the ACE substantially impaired its use, value and safety.

19.     Plaintiff directly notified all Defendants and each of them of the defective conditions of the ACE on numerous occasions.  Plaintiff notified Defendants that they wanted a rescission of the sale of the ACE but Defendants have failed and refused to buy back Plaintiff's defective ACE.

**VI.     Causes of Action**

**COUNT 1:  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

20.     Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

21.     Plaintiff is a "consumer" as defined in the DTPA.

22.     Defendants violated the following provisions of the DTPA:

a.   §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiff;

b.   §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus and Com Code (the warranty failed of its essential purpose and Plaintiff were deprived of substantial value of bargain because the defect was not corrected within reasonable time);

c.   §17.50(2): breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 354 (Tex. 1987);

d.   §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce Code;

e.   §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

23.   Because of the inherent defects in the ACE, which defects existed at the time the ACE was sold although not discovered until later, the ACE was not merchantable in that it would not pass without objection in the trade under the contract description and it was not fit for the ordinary purpose for which such recreational vehicles are used.  Furthermore, Defendants failed to perform the repair work in a good and workmanlike manner.  This conduct by Defendants constitute a breach of the implied warranties described above, which breach is actionable under DTPA § 17.50(a)(2).

24.   When the ACE was not repaired, the express warranties that it would be and had been repaired were breached. Defendants' breach of the express warranties is actionable under DTPA § 17.50(a)(2).

25.   Defendants' statements that the ACE's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendants's services.  For this reason, these representations were false, misleading and deceptive as defined in DTPA §

17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

26.     The Defendants acts or practices in the selling and/or repairing of the ACE   to Plaintiff were unconscionable actions or courses of action because they took advantage of the Plaintiff's lack of knowledge, ability, experience, or capacity of the Plaintiff to a grossly unfair degree.  For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

27.     Plaintiff further contends that Defendants' violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiff to seek civil penalties in trebling of their actual damages in accordance with the DTPA.

28.     This conduct was a producing and/or proximate cause of actual damages to Plaintiff, as set forth below.

29.     The limited remedy in Defendants' warranty fails of its essential purpose and deprives Plaintiff of the substantial value of the bargain because Defendants or its authorized dealerships did not correct the defects within a reasonable time.  Tex. Bus. and Com. Code § 2.719.  Therefore, any purported limitation of remedies is ineffective.

30.     The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

31.     This conduct was a producing and/or proximate cause of actual damages to Plaintiff, as set forth below.

32.     Any purported waiver or limitations of rights under DTPA by the Defendants  is a violation of public policy under §17.42.  WAIVERS:  PUBLIC POLICY:

(a)    Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void;  provided, however, that a waiver is valid and enforceable if:

    (1)     the waiver is in writing and is signed by the consumer;

    (2)     the consumer is not in a significantly disparate bargaining position; and

    (3)     the consumer is represented by legal counsel in seeking or acquiring the goods or services.

(b)    A waiver under Subsection (a) is not effective if the consumer's legal counsel was directly or indirectly identified, suggested, or selected by a defendant or an agent of the defendant.

(c)    A waiver under this section must be:

    (1)    conspicuous and in bold-face type of at least 10 points in size;

    (2)    identified by the heading "Waiver of Consumer Rights," or words of similar meaning;  and

    (3)    in substantially the following form

:               "I waive my rights under the Deceptive Trade Practices-Consumer Protection Act, Section 17.41 et seq., Business & Commerce Code, a law that gives consumers special rights and protections.  After consultation with an attorney of my own selection, I voluntarily consent to this waiver.

(d)     The waiver required by Subsection (c) may be modified to waive only specified rights under this subchapter.

33.    Any purported limitation or reduction in the statute of limitations by the Defendants under DTPA must not be less than two years under the Texas Civil Practice and Remedies Code §16.070. Contractual Limitations Period:

(a)    Except as provided by Subsection (b), a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A

-11-

stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.

(b)     This section does not apply to a stipulation, contract, or agreement relating to the sale or purchase of a business entity if a party to the stipulation, contract, or agreement pays or receives or is obligated to pay or entitled to receive consideration under the stipulation, contract, or agreement having an aggregate value of not less than $500,000.

34.     Under DTPA the statute of limitations is two years §17.565.  LIMITATION:

**All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.  The period of limitation provided in this section may be extended for a period of 180 days if the plaintiff proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action.**

35.     As a direct and proximate result of Defendants' willful violation of their obligations under the DTPA, Plaintiff has suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the , damages associated with the inconvenience suffered as a result of the complete failure of the  to operate properly, the loss of use of the  during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages, and attorneys' fees.  Plaintiff has incurred and will continue to incur in order to protect their rights in this matter.  The precise amount of damages is unknown at the present time but is estimated to be in excess of $150,000.00 and will be shown according to proof at trial.  Attorneys' fees, loss of use, interest, and other damages continue to accrue.

36.     Under the DTPA, Plaintiff are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails.  As a proximate result of

Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continues to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

37.    Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

38.    Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

39.    Defendants, THOR and CAMPING WORLD, are "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

40.    The ACE herein above described is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiff in fact purchased it wholly or primarily for personal use.

41.    The express warranties more fully described herein above pertaining to the ACE, is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

42.    The actions of Defendants and each of them as herein above described, in failing to tender the ACE, to Plaintiff free of defects and refusing to repair or replace the defective ACE, tendered to Plaintiff constitute a breach of the written and implied warranties covering the ACE, and hence a violation of the Magnuson-Moss Warranty Act.

43.    Plaintiff has performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of

Defendants as herein alleged.

44.     As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth herein above, Plaintiff has been damaged herein above in an amount in excess of $150,000.00 according to proof at trial.

45.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## COUNT 3: LENDER LIABILITY

46.     Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

47.     Plaintiffs are indebted to BANK OF THE WEST as a result of their purchase of the PHAETON.  Plaintiffs are entitled to assert all claims and defenses stated above against BANK OF THE WEST as a defense to the debt.

## COUNT 4:     BREACH OF EXPRESS WARRANTIES AND/OR CONTRACT

48.     Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

49.     Th Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiff' ACE or those similarly

situated were free from inherent risk of failure or latent defects.  In addition, the Defendants issued an expressed written warranty which covered the ACE and warranted that the ACE, was free of defects in materials and work quality at the time of delivery.

50.    As alleged above, the Defendants breached its warranties by offering for sale, and selling as safe to Plaintiff a ACE that was latently defective, unsafe, and likely to cause economic loss to Plaintiff.

51.    In breach of the foregoing warranties, the Defendants have failed to correct said defects.

52.    The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 5:    BREACH OF IMPLIED WARRANTIES

53.    Plaintiff re-alleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

54.    The Defendants impliedly warranted that Plaintiff' **ACE** which it designed, manufactured, and sold, were merchantable and fit and safe for his ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

55.    Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the ACE, had been driven for a period longer than the period of the written warranty,

and Defendants willfully withheld information about the defects from Plaintiff.

56.     Because of the defects, Plaintiff's ACE, is unsafe and unfit for use and has caused economic loss to the Plaintiff.   Therefore, the Defendants breached the implied warranty of merchantability.

57.     The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 6:     NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

58.     Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

59.     The Defendants had a duty to Plaintiff to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiff and correct products which are defective.

60.     The Defendants breached their duty of reasonably care and duty to disclose material adverse facts to Plaintiff by the following acts and omissions:

a.     Failure to design and manufacture a  ACE  that did not harbor the defects alleged herein;

b.     Failure to notify Plaintiff of the dangerous and defective condition of the ACE when Defendants knew or should have known of the dangerous and defective condition;

c.     Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

d.     Failure to repair the ACE  in accordance with the express and implied

-16-

warranties.

61.     The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 7:     BREACH OF CONTRACT

62.     Plaintiff re-allege and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

63.     Plaintiff would show that the actions and/or omissions of Defendants described herein above constitute breach of contract, which proximately caused the direct and consequential damages to Plaintiff described herein below, and for which Plaintiff  hereby sues.

64.     The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 8:     NEGLIGENT REPAIR

65.     Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

66.     On numerous occasions, Plaintiff delivered the ACE to Defendants for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

67.     On each occasion that Plaintiff returned the ACE  for repairs, Plaintiff are informed and believe, and thereupon allege, that Defendants attempted repairs of the ACE  pursuant to their

obligations under the express and implied warranties. Defendants owed a duty of care to Plaintiff to perform repairs on the ACE in a good and workmanlike manner within a reasonable time. These Defendants breached this duty.

68.     Defendants' attempted repairs of Plaintiff' ACE were done so negligently, carelessly, and recklessly as to substantially impair the ACE 's use, value, and safety in its operation and use. At no repair attempt was Plaintiff' ACE fully and completely repaired by Defendants, nor were many of the conditions of which Plaintiff complained fixed or significantly improved by Defendants' attempts at repair.   Nonetheless, each time Plaintiff picked up the vehicle after Defendants' repair attempts, Defendants represented to Plaintiff that the repairs were complete, and Plaintiff relied thereon.

69.     As a direct and proximate result of Defendants' negligent failure to repair the ACE within a reasonable time or within a reasonable number of attempts, Plaintiff were forced to drive a defective and dangerous ACE  in conducting their daily activities.   As a further direct and proximate result of Defendants' failure to repair the ACE  in a timely and workmanlike fashion, Plaintiff were forced repeatedly to take the ACE  in for further repair attempts and to leave the ACE for long periods of time at great inconvenience to themselves, and Plaintiff sustained actual damages.

70.     The damages Plaintiff has suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiff's health and well-being in the form of emotional distress.

## VII.    Economic and Actual Damages

71.    Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

    a..    Out of pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

    b.    Loss of use;

    c.    Loss of the "benefit of the bargain";

    d.    Diminished or reduced market value; and

    e.    Costs of repairs.

## VIII.    Multiple Damages

72.    The Defendants' conduct in violation of the DTPA was committed knowingly, as that term is defined in that Defendants had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

73.    Plaintiff further shows that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiff act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

74.    Therefore, Plaintiff is entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of his economic damages.

## IX.    Attorney Fees and Costs

75.    Plaintiff are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct

of Defendants as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## X.   Prayer

76.   For these reasons, Plaintiff pray for judgment against the Defendants for the following:

        a.      For general, special and actual damages according to proof at trial;

        b.      Rescinding the sale of the 2017 THOR ACE MODE 30.2 bearing  VIN 1F65F5Dy7HDA11075 and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

        c.      For incidental and consequential damages according to proof at trial;

        d.      Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

        e.      Any diminution in value of the ACE, attributable to the defects;

        f.      Past and future economic losses;

        g.      Prejudgment and post-judgment interest;

        h.      Damages for loss of use of vehicle;

        i.      Civil Penalties and/or Punitive damages;

        j.      Damages for mental anguish;

        k.      Attorney fees;

        l.      Costs of suit, expert fees and litigation expenses; and

        m      All other relief this Honorable Court deems appropriate.

1

2

## XI.    Demand for Jury Trial

3

77.    Plaintiff hereby demands a trial by jury to the extent authorized by law.

4

5                                         RESPECTFULLY SUBMITTED:

6                                         BY: /s/ *Richard C. Dalton*

7                                         Richard C. Dalton
                                          Texas Bar No. 24033539
8                                         Louisiana Bar No. 23017
                                          California Bar No. 268598
9                                         1343 West Causeway Approach
                                          Mandeville, Louisiana 70471
10                                        E-mail: rick@rickdaltonlaw.com
                                          Tel. (985) 778-2215
11                                        eFax: (985) 261-2855

12

13                                        ATTORNEY FOR PLAINTIFF

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28